IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHRISTIAN JACKSON                                               PETITIONER

v.                    NO. 4:24-cv-00789-LPR-PSH

DEXTER PAYNE                                                    RESPONDENT

ORDER

In this case, filed pursuant to 28 U.S.C. 2254, petitioner Christian Jackson ("Jackson") challenges the disciplinary he received on March 21, 2024. He does so on the ground that his right to due process was violated. He also alleges that the social media policy adopted by the Arkansas Division of Correction ("ADC") violates the First Amendment. His claims, though, are outside the scope of 28 U.S.C. 2254. Because he has raised "potentially viable" conditions-of-confinement claims, and he gave anticipatory consent to the re-characterization of his claims to the "correct procedural vehicle," see Spencer v. Haynes, 774 F.3d 467, 471 (8th Cir. 2014), this case will be converted to one pursuant to 42 U.S.C. 1983.

The record reflects that in March of 2024, ADC officials discovered that a Facebook account belonging to Jackson had been updated by the use of a cell phone. He was thereafter charged with rule violations arising from his alleged use of social media. A disciplinary hearing was held on March 21, 2024, during which evidence was introduced that Jackson's Facebook account had been updated by the use of a cell phone. Jackson maintained, in response, that he had not updated the Facebook account, but a friend had done so in an effort to "push" a children's book Jackson had authored. See Docket Entry 2 at CM/ECF 33. At the conclusion of the hearing, Jackson was convicted of violating Rule 09-15, possession/introduction/use of a cell phone or any cell phone component, and Rule 09-16, use of the internet or social media.[1] He lost his commissary and visitation privileges for sixty days, lost his telephone privileges for 365 days, was sentenced to punitive isolation for thirty days, was reduced to class IV, and forfeited 2,187 days of good time.

Jackson appealed the disciplinary, doing so eventually to respondent Dexter Payne ("Payne"), the Director of the ADC. Payne found no merit to the appeal and upheld the disciplinary.

---

[1] Jackson was also charged with violating Rule 12-3, failure or refusing to obey verbal and/or written order(s) of staff, but he was acquitted of that rule violation.

2

Jackson then began this case by filing a petition for writ of habeas corpus and joining it with a lengthy memorandum of law with attached exhibits. In the submissions, he raised three claims. First, his right to due process was violated when he was given the wrong form—an ISSR 100 form and not an F-831-1 form—in connection with the disciplinary. See Docket Entry 2 at CM/ECF 7-14. Second, Jackson's right to due process was violated because the disciplinary is not supported by "some evidence" as required by Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445 (1985). See Docket Entry 2 at CM/ECF 15-21. As a part of the claim, he maintained that "the amount of good time taken was excessive, did not comport with policy or state law, and was imposed on [him] when other similarly situated individuals lost no good conduct time at all for related offenses." See Docket Entry 2 at CM/ECF 18-19. Third, the prison's social media policy violates the First Amendment. See Docket Entry 2 at CM/ECF 21-30. He asked that the disciplinary be overturned and the policy be declared unconstitutional. In a concluding paragraph of the petition, he alternatively requested the following:

> V. Should this Court determine that this is not a habeas petition, petitioner asks the Court to convert this petition to one pursuant to 1983.

> Should Petitioner raise a potentially viable conditions-of-confinement claim, he asks the Court to be afforded the opportunity to pursue that claim pursuant to Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014).

See Docket Entry 2 at CM/ECF 30.

Payne filed a response to the petition. In the response, Payne maintained that the petition should be dismissed because Jackson's claims are not cognizable in a proceeding pursuant to 28 U.S.C. 2254. Payne additionally maintained that Jackson has not alleged potentially viable conditions-of-confinement claims, and this case should not be converted to one pursuant to 42 U.S.C. 1983.

Jackson thereafter filed a reply and maintained, in part, that his loss of 2,187 days of good time was improper because "the only charge that carries the revocation of all good ... time—possession of a cell phone or cell phone component—[was not] proven ..." See Docket Entry 10 at CM/ECF 14-15. He also alleged that prison officials retaliated against him for filing the case at bar when they confiscated a set of books he received through the mail. He maintained that "the writ must issue" and "his disciplinary conviction should be expunged," or, in the alternative, the Court should "convert the instant habeas petition into a 1983." See Docket Entry 10 at CM/ECF 15-16.

In Crockett v. Kelley, No. 5:18-cv-00210-JM-JTR, 2019 WL 1590947 (E.D. Ark. 2019), report and recommendation adopted, No. 5:18-cv-00210-JM, 2019 WL 1590588 (E.D. Ark. 2019), Crockett challenged a disciplinary, and the resulting loss of his commissary, telephone, and visitation privileges; sentence to punitive isolation; reduction in class; and loss of 500 days of good time, by filing a petition pursuant to 28 U.S.C. 2254. He alleged in the petition that he was given the wrong form—an ISSR 100 form and not an F-831-1 form—in connection with the disciplinary, and he was actually innocent of the disciplinary. United States District Judge James M. Moody, Jr., dismissed the petition, finding that Crockett's challenges to his loss of privileges, sentence to punitive isolation, and reduction in class were outside the scope of 28 U.S.C. 2254. With respect to Crockett's challenge to his loss of good time, Judge Moody found the following:

> A prisoner may maintain a procedural due process challenge to a prison disciplinary proceeding only if he is deemed to have a liberty interest sufficient to trigger the protections of the Fourteenth Amendment. Sandin v. Conner, 515 U.S. 472, 485-86 (1995); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2002). Liberty interests arising from state law are limited to "freedom from restraint" which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." Sandin v. Connor, 515 U.S. 472, 484, 487 (1995).

In a habeas action, "[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (citing Preiser v. Rodriguez, 411 U.S. 475, 499 (1983)) (emphasis added); see also Spencer v. Haynes, 774 F.3d 467, 469-70 (8th Cir. 2014) (citing and applying Kruger). Thus, for Crockett's claims arising from the disciplinary proceeding to implicate a "liberty interest" capable of making them actionable under 2254, he must establish that the loss of 500 days of good-time credit served to lengthen his sentence. As the Court noted in Sandin, the "Due Process Clause itself does not create a liberty interest in credit for good behavior." Id. at 477. Instead, a court must look to the specific state statute in question to determine whether a liberty interest in good-time credit has been created by the state. Id.

Arkansas statutory law establishing good-time credit "plainly states '[m]eritorious good time will not be applied to reduce the length of a sentence,'" but instead impacts an inmate's "transfer eligibility date." McKinnon v. Norris, 366 Ark. 404, 408, 231 S.W.3d 725, 729 (Ark. 2006) (quoting Ark. Code Ann. 12-29-201(d) and (e)(1)) (emphasis added). In McKinnon, the Arkansas Supreme Court rejected the state habeas petitioner's claim that his prison sentence had been extended unlawfully because, following a prison disciplinary, his good-time credits were forfeited and his ability to earn future credits was eliminated. According to the Court, "Arkansas has not created a liberty interest in good time under the constitutional analysis in Wolff v. McDonnell," (emphasis added). Id. at 408-409, 231 S.W.3d at 730.

The Court's legal conclusion in McKinnon is not binding on federal courts. However, courts in the Eastern District of Arkansas have reached the same conclusion under federal law. As United States Magistrate Judge Beth Deere reasoned in a Recommendation adopted by United States District Judge Leon Holmes:

6

> Instead of reducing the term of a prisoner's sentence, Arkansas's good-time statute reduces the time until the inmate is eligible for transfer, i.e., consideration of parole. Persechini v. Callaway, 651 F.3d 802, 808 (8th Cir. 2011).
>
> There is clearly a difference between being in the free world under supervision (parole) and being confined in a prison 24-hours a day, seven days a week, even though in both circumstances the inmate is serving his or her sentence. This stark difference is recognized by an inmate's liberty interest in the revocation of parole. But the Supreme Court has long noted the distinction between parole release and parole revocation. Greenholtz v. Inmates of the Neb. Penal and Corr. Complex, 442 U.S. 1, 99 S.Ct. 2100 (1979). The crucial difference is "between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." Id. at 9. Under Arkansas law, good-conduct time reduces the length of time until an inmate is eligible for parole, but it does not reduce the length of the sentence itself. See Ark. Code Ann. 16-93-614 and Ark. Code Ann. 12-29-201(d).
>
> In sum, Mr. Roberts has a liberty interest in release at the expiration of his sentence; he does not have a liberty interest in the possibility of a conditional release prior to the expiration of his sentence. See Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011) (the federal constitution does not confer a right to be conditionally released before the expiration of a valid sentence).

Roberts v. Hobbs, Case No. 5:14-cv-00044-JLH-BD, 2014 WL 1345341, 2-3 (E.D. Ark. April 4, 2014) ... Thus, the Court concludes that the legal analysis in Roberts and McKinnon are persuasive and squarely support the denial of Crockett's claims.

> ...
>
> Because Crockett has failed to show that the loss of good-time credits will have any impact on the length of his sentence, his claim should be denied.

See Id. at 2019 WL 1590947, 2-4 (emphasis and footnotes omitted).

Here, Jackson is not challenging the validity of the conviction that resulted in his current incarceration, and he is not challenging the sentence he received for that conviction. He is instead challenging the March 21, 2024, disciplinary on the grounds that he was given the wrong form in connection with the disciplinary proceeding, and the disciplinary is not supported by "some evidence." He is also challenging the constitutionality of the ADC's social media policy. Given the nature of his claims and the relief he is seeking, e.g., restoration of privileges, release from punitive isolation, restoration of class, the federal courts do not have the power or subject matter jurisdiction to issue a writ of habeas corpus. See Croston v. Payne, No. 4:22-cv-00616-LPR-JJV, 2022 WL 18106996 (Aug. 23, 2022), report and recommendation adopted, No. 4:22-cv-00616-LPR, 2023 WL 23806 (Jan. 3, 2023) (due process and actual innocence challenge to disciplinary) (challenge to loss of privileges, sentence to punitive isolation, and reduction in class outside scope of 28 U.S.C. 2254).

What of Jackson's loss of good time? Although habeas corpus relief might be available for the loss of good time, it is not available here because he does not have a liberty interest in the possibility of his release prior to the expiration of his sentence. The loss of 2,187 days of good time, while dramatic, does not lengthen his sentence. The loss of the good time merely impacts his "transfer eligibility date," or the "earliest date he becomes eligible for transfer from the ADC to less restrictive placement or supervision by the [Arkansas Division] of Community Correction, which may include parole." See Robinson v. Kelley, No. 5:16-cv-00167-SWW-JTR, 2017 WL 3404973 (E.D. Ark. July 6, 2017), report and recommendation adopted, No. 5:16-cv-00167-SWW, 2017 WL 3401274 (E.D. Ark. Aug. 8, 2017).

On the basis of Crockett v. Kelley, and given Williamson v. Payne, No. 4:22-cv-01046-LPR-ERE, 2022 WL 19409973 (E.D. Ark. Nov. 21, 2022), report and recommendation adopted, No. 4:22-cv-01046-LPR, 2023 WL 2895886 (E.D. Ark. Apr. 11, 2023) (following Crockett v. Kelley), and Williams v. Payne, No. 4:21-cv-00577-JJV, 2021 WL 5183640 (E.D. Ark. Nov. 8, 2021) (following Crockett v. Kelley), the Court finds that Jackson's claims are outside the scope of 28 U.S.C. 2254. They are, in fact, "potentially viable" conditions-of-confinement claims and can only be raised in a complaint pursuant to 42 U.S.C. 1983.

The Court would ordinarily follow Spencer v. Haynes at this juncture and seek Jackson's consent before re-characterizing his claims into the correct procedural vehicle, i.e., as possibly being within the ambit of 42 U.S.C. 1983.[2] Here, though, he has given anticipatory consent to the re-characterization of this case. For that reason, the case will be converted from one pursuant to 28 U.S.C. 2254 to one pursuant to 42 U.S.C. 1983. Jackson should be aware, though, that he will be required to comply with the filing fee requirements for prisoner cases, which require paying a $405 filing fee.[3] If he obtains permission to proceed in forma pauperis, though, he need only pay a $350 filing fee, and it may be paid in installments.

Given the foregoing, the Court orders the following:

1) this case is converted from one pursuant to 28 U.S.C. 2254 to one pursuant to 42 U.S.C. 1983;

2) the Clerk of the Court ("Clerk") is directed to re-classify the case as a "555" conditions-of-confinement case;

---

[2]  In Spencer v. Haynes, the Court of Appeals held that, where a petitioner has improperly raised a "potentially viable" condition-of-confinement claim in a habeas corpus proceeding, the court should "recharacterize the claim into the correct procedural vehicle." See Gordon v. Cain, No. 2:17-cv-00114-KGB-JTK, 2018 WL 8786163, 2, (E.D. Ark. July 30, 2018), report and recommendation adopted, No. 2:17-cv-00114-KGB, 2019 WL 3059849 (E.D. Ark. July 11, 2019). Before recharacterizing the claim, though, the court should obtain the petitioner's consent.

[3]  It should be noted that Jackson began this case by paying a five dollar filing fee.

3) Jackson is given up to, and including, **January 13, 2025**, to either pay the $405 filing fee or file an application for leave to proceed in forma pauperis;[4]

4) the Clerk is directed to send Jackson the forms necessary to file an application for leave to proceed in forma pauperis;

5) if Jackson desires to amend his claims in this case, to include not only the three claims at bar but the retaliation claim alleged in his reply, he must do so by filing an amended complaint pursuant to 42 U.S.C. 1983 on or before **January 13, 2025**;

6) the Clerk is directed to send Jackson the forms necessary to file a complaint pursuant to 42 U.S.C. 1983; and

7) in the event Jackson fails to pay the filing fee, or file an application for leave to proceed in forma pauperis, by the close of business on **January 13, 2025**, it will be recommended that this case be dismissed.

Jackson is again notified of his obligation to comply with the Federal Rules of Civil Procedure as well as the Local Rules for the United States District Court for the Eastern District of Arkansas. Specifically, he is directed to Local Rule 5.5(c)(2), which provides the following:

---

[4] It might be that Jackson's payment of the five dollar filing fee in this case will be applied to his eventual payment of the filing fee in the 42 U.S.C. 1983 case, but that determination will be made at a later time.

11

It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. A party appearing for himself/herself shall sign his/her pleadings and state his/her address, zip code, and telephone number. If any communication from the Court to a pro se plaintiff is not responded to within thirty (30) days, the case may be dismissed without prejudice. Any party proceeding pro se shall be expected to be familiar with and follow the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 13th day of December, 2024.

_____
UNITED STATES MAGISTRATE JUDGE