**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**CHRISTIAN JACKSON**                                        **PLAINTIFF**
**ADC #161090**

**v.**                            **No. 4:24-cv-00789-LPR-PSH**

**JORDAN SLAYDEN**                                          **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Christian Jackson, an inmate at the Larry B. Norris Unit of the Arkansas Division of Correction (ADC), initiated this lawsuit on September 18, 2024 by filing a petition for habeas relief (Doc. No. 1). On December 13, 2024, the case was converted to a lawsuit under 42 U.S.C. § 1983 (Doc. No. 13). Jackson filed

a Second Amended Complaint on May 13, 2025 (Doc. No. 25) and has been allowed to proceed with an individual-capacity First Amendment retaliation claim against Defendant Jordan Slayden.  Doc. No. 43.  Jackson's retaliation claim arises from a disciplinary written by Slayden after Jackson filed his habeas petition on September 18, 2024.  *See* Doc. Nos. 25 at 6-7.  Jackson's other claims have been dismissed without prejudice for failure to state a viable claim.  Doc. No. 43, n.1 ("[U]pon the issuance of this Order, the only live claim remaining in this case is Plaintiff's individual-capacity First Amendment retaliation claim against Defendant Slayden.").

Before the Court is a motion for summary judgment, brief in support, and a statement of undisputed facts filed by Slayden, claiming that Jackson did not exhaust available administrative remedies before he filed this lawsuit (Doc. Nos. 52-54). Jackson filed a response and brief in support (Doc. Nos. 58-59).  For the reasons described below, Slayden's motion for summary judgment should be granted, and Jackson's claims against him should be dismissed without prejudice for failure to exhaust available administrative remedies.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude

summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.  Analysis

Slayden argues that Jackson's claims against him should be dismissed because he failed to exhaust his administrative remedies before he filed this lawsuit.  Doc. No. 53.  In support of his motion, Slayden submitted the declaration of Terri Grigsby, the ADC's Inmate Grievance Appeal Supervisor (Doc. No. 52-1); a copy of the ADC's grievance policy, Administrative Directive 19-34 (Doc. No. 52-2); and a copy of Grievance MX-24-00907 (Doc. No. 52-3).

### A.      *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court.  *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014).  Exhaustion under the PLRA is mandatory.  *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA does not prescribe the manner in which exhaustion occurs.  *See Jones v. Bock*, 549 U.S. at 218.   It merely requires compliance with prison grievance

procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 52-2 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 6. Inmates are to "specifically name each individual involved in order that a proper investigation and response may be completed." *Id*. at 5. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 6. A problem solver or staff member holding the rank of sergeant or above can collect the grievance and return the yellow and pink copies of the grievance to the inmate as receipts. *Id.* at 7. The problem solver or staff member investigates the complaint, and may attempt to resolve the complaint by meeting with the inmate or taking certain other steps, but ultimately must provide a written response at the bottom of the form. *Id.* at 7–8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit either the pink or yellow copy of his Unit

Level Grievance Form as a formal grievance. *Id.* at 8. The inmate retains either the pink or yellow copy, whichever he did not submit for Step Two. *Id.* at 9.

The inmate should receive a Response to the Unit Level Grievance Form or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at 10–11. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 11-12. An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II). *Id.* at 12. The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id.* Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 13.

According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

**B.**     *Jackson's Grievances*

In her declaration, Inmate Grievance Supervisor Terri Grigsby stated that she searched Jackson's grievance history from September 18, 2024 (when he initiated this lawsuit by filing a habeas petition), and May 13, 2025 (when Jackson filed his Second Amended Complaint), for any exhausted non-medical grievances pertaining to Jackson's claims in this case or naming Slayden. *See* Doc. No. 52-1 at ¶ 33. She identified one grievance pertaining to Jackson's claims in this case, MX-24-00907. *Id.* at ¶ 34.

Jackson maintains he exhausted his claims by appealing the disciplinary he received on October 11, 2024; and he provided copies of his appeal and the appeal decision. Doc. No. 59 at 23-24. He also provides three unnumbered grievances that do not appear to have advanced to Step Two. *See* Doc. No. 59 at 28-30. Each is described below along with grievance MX-24-00907.

1.     <u>October 11, 2024 Disciplinary</u>. A complete copy of this disciplinary has not been provided with Slayden's pending motion for summary judgment or Jackson's response. Jackson provided a copy of his disciplinary appeal, submitted on October 22, 2024. Doc. No. 59 at 24. In that appeal, Jackson stated:

> (1) The disciplinary should be reversed due to the fact that no violation of policy occurred. The correspondence policy, MS 16.02.IV.A.6&7, lays out what is considered privileged and attorneys and the media fall into that category. Arguably, the mail was media that came from a publisher and was legal in that the legal division of the company was

the correspondent.  Additionally, in Section IV.G. of the above policy, books must come from a publisher or bookstore.

(2)  The unit failed to subject the book to the requirements of AD2022-22 in rejecting the book.  In III.A. of that policy, it lays out the requirements for rejection of publications which was not followed.  The book, however, had already been allowed into the institution and is an exhibit in a federal habeas petition.  (See Jackson vs. Payne, Case No. 4:24-cv-00789-LPR-PSH, U.S.D.C., E.D. Ark. DE #3)  If the book was allowed before with no problems, it is not contraband now.

*Id.*   Director Dexter Payne upheld some of Jackson's disciplinary verdicts and modified others.  *Id.* at 21.

2.      Unnumbered Step One Grievances.

Jackson filed three Step One grievances on October 10, 2024.  Doc. No. 59 at 28-30.  The first, labeled Exhibit SK6, is a complaint about his confiscated children's books.  *Id.* at 28.  It does not mention a disciplinary or retaliation.  *Id.*  In the second, labeled Exhibit SK7, Jackson complains that Slayden confiscated his books on October 9 and threatened to issue him a disciplinary.  *Id.* at 29.  He stated, "the threat of disciplinary action is in retaliation for the federal habeas petition that I filed challenging a false disciplinary that Lt. Slayden filed against me for social media and cell phone in Jackson v. Payne, Case No. 4:24-cv-00789-LPR-PSH, U.S.D.C., E.D. Ark."  *Id.*   The third, labeled Exhibit SK8, is another complaint about the confiscation of the books but does not allege retaliation by Slayden.  *Id.* at 30.

There is a step one response on each grievance dated October 10, 2024, and the Step Two section is filled out and dated the same day.  At the bottom of each

grievance, Sgt. M. Hill has stated that the form was received on October 11, 2024, and forwarded to the grievance officer. *Id.* at 28-30. However, no response to these grievances are provided in the record and Inmate Grievance Supervisor Grigsby did not find them in her search of completed grievances.

3.    MX-24-00907. Jackson initiated MX-24-00907 on October 18, 2024. Doc. No. 52-3 at 5. He complained that on October 8, 2024, Defendant Slayden and mailroom advisor Jackie Davis Smith, confiscated three children's books and other documents that he received in the mail addressed as legal correspondence. *Id.* Jackson claimed that Slayden and Smith read the documents without his consent and refused to allow him to access the documents which constituted theft and violation of both his rights and prison policy. *Id.* Jackson did not mention the disciplinary he received in connection to the confiscated books or allege that Slayden issued a disciplinary in retaliation for the habeas petition Jackson filed on September 18, 2024.

MX-24-00907 was rejected at the Unit Level because it involved a non-grievable publication matter. *Id.* at 4. Jackson appealed the rejected grievance, stating,

> Publications are not a non grievable issue but if they were I'm attempting to exhaust all administrative remedies. Also the reason of rejection is to avoid the issue. Publication policy wasn't followed; and I was denied my childrens book.

*Id.* at 4.  The grievance appeal was rejected at the Assistant and/or Deputy Director's Level because it involved a non-grievable publication matter.  *Id.* at 3.

### C.    *Jackson's Exhaustion of Available Remedies*

Slayden argues that Jackson did not exhaust administrative remedies with respect to his claim because he did not grieve his retaliation complaint.  Doc. No. 53 at 9-11.  Jackson argues that he exhausted his claims by appealing the disciplinary he received.[1]  *See* Doc. No. 59 at 4-5.  He claims he could not grieve the allegedly retaliatory disciplinary because disciplinaries are non-grievable under the ADC's grievance procedure.  *Id.*  However, the ADC's grievance procedure specifically provides that claims of retaliation are grievable.  *See* Doc. No. 52-2 at 3.  Further, an inmate must use the grievance procedure to lodge complaints against staff.  *See* Doc. No. 52-2 at 2 (explaining that a grievance may be submitted by an inmate regarding "[a]n action of another employee(s) . . . that personally affects the inmate; or . . . [a]n incident occurring within the facility that personally affects the inmate.").

The disciplinary appeal documentation provided by Jackson does not show that he made any allegation concerning retaliation in his appeal.  But even if he had, he cannot rely on statements he made in defense of the disciplinary he received, or

---

[1] In his responsive brief, Jackson addresses his claim that Slayden issued him a wrongful disciplinary in March of 2024 – that claim has been dismissed from this case. *See* Doc. No. 43.  He also addresses the merits of his claims rather than making argument as to why his claims are exhausted.  Those arguments are irrelevant to this decision and are therefore not addressed here.

in his appeal of that disciplinary conviction, to serve as a grievance of his claims. He was instead required to use the ADC's grievance procedure to grieve alleged retaliation by a staff member. Jackson provided a copy of a Step One grievance that described his claim that Slayden issued the October 2024 disciplinary in retaliation for filing this lawsuit. *See* Doc. No. 59 at 29. However, there is no evidence Jackson completed the grievance process with respect to this grievance (and he makes no such argument in his responsive pleadings). According to the ADC's grievance procedure, the grievance process is not complete until the Deputy Director responds or the appeal is rejected. Doc. No. 52-2 at 13. Additionally, the Eighth Circuit Court of Appeals has made it clear that a prisoner's remedies are not exhausted unless the inmate pursues the grievance to its final stages and receives a decision on the merits. *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012); *Guinther v. Barker*, No. 5:19-CV-00110-BRW-PSH, 2020 WL 4983283, at *8 (E.D. Ark. Aug. 3, 2020), *report and recommendation adopted,* No. 5:19-CV-00110-BRW-PSH, 2020 WL 5005417 (E.D. Ark. Aug. 24, 2020). Even if Jackson received no response to his Step Two grievance, he was required to appeal the lack of a response within five days of the date the response was due. *See* Doc. No. 52-2 at 11. There is no evidence he did so. Accordingly, Jackson's unnumbered October 10, 2024 grievance alleging retaliation by Slayden does not serve to exhaust his remaining claim in this case.

## IV.  Conclusion

For the reasons stated herein, the Court recommends that Slayden's motion for summary judgment (Doc. No. 52) be granted, and Jackson's claim against Slayden be dismissed without prejudice due to Jackson's failure to exhaust available administrative remedies.

SO RECOMMENDED this 14th day of April, 2026.

                           _____

UNITED STATES MAGISTRATE JUDGE